IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DANNY JOE IRBY                              §
                                            §
v.                                          §          C.A. NO. C-10-041
                                            §
NUECES COUNTY SHERIFF, ET AL.               §

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This is a pro se[1] prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Pending are Defendants' motions for summary judgment. (D.E. 45, 46, 47). Plaintiff has not filed a response.[2] For the reasons stated herein, Defendants' motions are granted.

## I. JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. After consent by the parties, (D.E. 15, 20, 30), the case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 33); see also 28 U.S.C. § 636(c).

## II. PROCEDURAL HISTORY

On February 4, 2010, Plaintiff filed a civil rights action regarding events that occurred while he was incarcerated at the Nueces County Jail. (D.E. 1). He accused the Nueces County Sheriff of implementing inadequate policies and the Nueces County Jail Medical Director of deliberate indifference to his serious medical needs. Id. at 3.

---

[1] Plaintiff filed the complaint pro se, (D.E. 1), and later obtained an attorney, (D.E. 29), who subsequently withdrew. (D.E. 53, 55). Because his only substantive filing, i.e., the complaint, was done without assistance of counsel, his claim here receives the more forgiving judicial scrutiny accorded to pro se prisoner civil rights actions. Parker v. Fort Worth Police Dep't, 980 F.2d 1023, 1026 (5th Cir. 1993) (per curiam) ("'Pro se prisoner complaints must be read in a liberal fashion ....'") (citations omitted).

[2] Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

On February 23, 2010, a <u>Spears</u>[3] hearing was held, at which Plaintiff added Officer John Doe as a defendant for alleged excessive force.  On March 2, 2010, a memorandum and recommendation was issued recommending that Plaintiff's deliberate indifference claims against the Sheriff and Medical Director be dismissed, that his claim against Defendant Doe be retained, and that Nueces County be substituted as an additional defendant.  (D.E. 7).  Defendants Nueces County and Officer John Doe filed an answer on April 5, 2010.  (D.E. 14).  On April 6, 2010, the Court adopted the memorandum and recommendation with respect to Defendant Doe and Nueces County, but retained Plaintiff's claims against the Nueces County Sheriff and Medical Director. (D.E. 16).  Defendants William Flores, a jail physician, and Jim Kaelin, the Nueces County Sheriff, filed answers on May 5, 2010.  (D.E. 21, 22).  On November 10, 2010, the claim against Defendant John Doe was dismissed without prejudice on Plaintiff's motion.  (D.E. 38, 40).  On February 14, 2011, Defendants filed motions for summary judgment.  (D.E. 45, 46, 47).

### III.  PLAINTIFF'S ALLEGATIONS

The following allegations were made in Plaintiff's complaint or at his <u>Spears</u> hearing:

On January 4, 2010,[4] Plaintiff was incarcerated at the Nueces County Jail ("Jail"). Following breakfast and at approximately 4:00 a.m., while he was using the toilet in his cell, he heard Officer John Doe yell, "close the door!"  As he reached for the door, the officer kicked it shut, catching his left index finger in the door frame.  Plaintiff screamed, but the officer did

---

[3] <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Neitzke v. Williams</u>, 490 U.S. 319, 324 (1989); <u>see</u> <u>also</u> <u>Eason v. Holt</u>, 73 F.3d 600, 602 (5th Cir. 1996) (testimony given at a <u>Spears</u> hearing is incorporated into the pleadings) (citation omitted).

[4] In the original complaint, Plaintiff alleged that he suffered his injuries "on or about January 8, 2010." (D.E. 1, at 4).  The medical records submitted by Defendants indicate that he complained of a hand injury on January 4, 2010.  (D.E. 45-6, at 17).  During the discovery process, Plaintiff acknowledged that this complaint concerned the injury sustained during the alleged incident forming the basis of this action.  (D.E. 45-20, at 6).

nothing to help him.  Two jailers told him to "shut up" when he continued to complain.

The next day, Plaintiff went to the infirmary seeking medical attention.  While there, unidentified medical personnel told him that the Jail "did not treat broken fingers or debride[5] wounds."  Thereafter, Plaintiff sent three separate requests for medical treatment, but he was not seen again in the infirmary.

On January 13, 2010, an officer filled out a medical request form on Plaintiff's behalf and then took him to the pill nurse to obtain medication.  The pill nurse gave him an anti-inflammatory pill and a mild pain pill.

On January 14, 2010, Plaintiff was transferred to a different unit, where he was diagnosed with a broken finger and an infection.  He was then transferred to a hospital in Lubbock, Texas for treatment, receiving antibiotics and two operations.  One of Plaintiff's fingers became significantly shorter as a result of the incident, and he now lacks full range of motion.

Plaintiff asserts that the Nueces County Sheriff is liable for his injuries because he implemented inadequate policies to prevent the harm that befell him.  He maintains that the Nueces County Medical Director is also responsible for deliberate indifference to his serious medical needs.  Plaintiff is seeking compensatory and punitive damages.

## IV.  SUMMARY JUDGMENT EVIDENCE

Following a state criminal conviction, Plaintiff was committed to the custody of the

---

[5] Debridement is "the removal of foreign material and devitalized or contaminated tissue from or adjacent to a traumatic or infected lesion until surrounding healthy tissue is exposed."  Dorland's Illustrated Medical Dictionary 460 (29th ed. 2000) [hereinafter Dorland's].

Nueces County Jail on December 22, 2009.  (D.E. 45-12, at 2).[6]  On January 4, 2010, he submitted an inmate communication form asking for a medical review of a swollen finger.  (D.E. 45-6, at 17).  Two Jail medical forms indicate that Plaintiff refused treatment on January 5, 2010. Id. at 11, 16.  One is signed by Plaintiff and witnessed by a guard.  Id. at 16.  It acknowledges that he "may require medical treatment" and had "been offered medical treatment," but declined to receive it.  Id.

On January 8, 2010, Maria Briones, a nurse, suggested that Plaintiff's prescription for acetaminophen be discontinued.  Id. at 13.  On January 12, 2010, he was prescribed albuterol and amitriptyline.  (D.E. 45-7, at 1).  A form completed on January 14, 2010, listed various ailments that Plaintiff suffered from, but did not list any problem with an injured finger or untreated wound.  (D.E. 45-6, at 3).

The Jail's rules and regulations handbook, (D.E. 45-14, at 19), which Plaintiff received upon his arrival at the Jail, (D.E. 45-16, at 5), provides a detailed procedure for addressing the medical needs of inmates.  A separate document of medical policies and procedures lays out the plan for medical treatment in even greater detail.  (D.E. 45-15).

Several Jail and medical employees swear in affidavits that policy compels them to make available medical treatment for inmates who need it, which includes debriding wounds and treating broken bones.  (D.E. 45-18-45-19).  A contract between Nueces County and the Christus Spohn Hospital requires the latter to provide medical care to inmates twenty-four hours a day, seven days a week, including emergency care.  (D.E. 45-24, at 3; D.E. 45-26).

---

[6] The three motions for summary judgment by Defendants attach identical records in the same order.  (D.E. 45, 46, 47).  In the interest of convenience, citations will be made only to docket entry forty-five, though the documents cited can be found in the corresponding locations of the other docket entries.

According to the inmate grievance procedure at Nueces County Jail, when an inmate is dissatisfied with any aspect of jail life he must first bring an informal complaint on a "communication form."  (D.E. 45-2, at 3).  If the complaint is not resolved, he then writes a letter to the duty sergeant, and if it is not addressed satisfactorily at that level he continues to take his grievance up the chain of command to the shift lieutenant and jail captain.  Id.  If the complaint remains unresolved, the inmate must request an inmate grievance from the communication officer and then submit it.  Id.

Officer Lance Cooper, the official responsible for supervising the grievance process at the Nueces County Jail, swears that there are no records that Plaintiff ever filed any administrative complaint regarding medical treatment.  Id. at 1.  Defendants have also submitted affidavits from twenty-one Jail employees, each of whom deny any knowledge of the alleged door-slamming incident.  (D.E. 45-18-45-19).

## V.  DISCUSSION

Defendants move for summary judgment on the grounds that Plaintiff failed to exhaust administrative remedies, that his injuries were at most de minimis, that they were not deliberately indifferent to his serious medical needs, and that the imposition of municipal liability is not warranted.  (D.E. 45, 46, 47).

**A.**    **The Standard Of Review For Summary Judgment Motions.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp.,

278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

## B.    Plaintiff Failed To Exhaust Administrative Remedies.

Defendants move to dismiss Plaintiff's claims for failure to exhaust administrative remedies.  (D.E. 45, at 5-7; D.E. 46, at 5-7; D.E. 47, at 5-7).  They assert that Plaintiff never filed

a formal grievance regarding his complaint, despite the existence of a formalized administrative

process with which he was well-aware.  (D.E. 45, at 5-7; D.E. 46, at 5-7; D.E. 47, at 5-7).

 In the Prison Litigation Reform Act, Congress mandated that inmates must exhaust their

administrative remedies prior to filing civil rights actions:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all inmate suits about prison life,

whether involving general circumstances or specific incidents.  Porter v. Nussle, 534 U.S. 516,

532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is

required to exhaust his administrative remedies even if damages are unavailable through the

grievance process.  Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260

F.3d 357, 358 (5th Cir. 2001).  The Supreme Court has clarified that a prisoner must complete

the administrative review process in accordance with all procedural rules, including deadlines, as

a precondition to bringing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 93 (2006).

However, an inmate's failure to exhaust is an affirmative defense that must be raised by the

defendants.  See Jones v. Bock, 549 U.S. 199, 216 (2007).

 The purpose of the exhaustion requirement is to alert jail officials to problems so that the

prison has a chance to address the claims before they reach federal court.  Woodford, 548 U.S. at

94.  As acknowledged by the Supreme Court, Congress intended the administrative process to

"filter out some frivolous claims and foster better-prepared litigation once a dispute did move to

the courtroom, even absent formal factfinding."  Booth, 532 U.S. at 737.

In <u>Johnson v. Johnson</u>, 385 F.3d 503 (5th Cir. 2004) the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies.  The court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'"  <u>Id.</u> at 516 (citations omitted); <u>accord</u> <u>Wilbert v. Quarterman</u>, 647 F. Supp. 2d 760, 766 (S.D. Tex. 2009) (citation omitted).  In addition, the nature of the complaint will influence how much detail is necessary.  <u>Johnson</u>, 385 F.3d at 517; <u>Wilbert</u>, 647 F. Supp. 2d at 766 (citation omitted).  For example, a complaint about a correctional officer should identify a specific person, whereas a complaint about a prison condition might not need to identify any individual.  <u>Johnson</u>, 385 F.3d at 517; <u>Wilbert</u>, 647 F. Supp. 2d at 766 (citation omitted).

When asked during the discovery process what steps he took to exhaust his administrative remedies before filing this action, Plaintiff replied that he made "numerous requests ... to ascertain [sic] medical care but ... never received the proper medical care" and further stated that he was "not aware of any administrative remedy for losing part of his finger." (D.E. 45-20, at 7).

Plaintiff failed to exhaust his administrative remedies.  His insistence that he made "numerous requests" to receive medical treatment is not borne out by the record (at least with respect to formal, written requests), and is, in any event, irrelevant.  Nueces County established a clear and comprehensive policy for the submission of inmate complaints, and made those policies available to Plaintiff.  (D.E. 45-14-16).  He chose not to avail himself of them. Plaintiff's seemingly sarcastic remark that he is "not aware of any administrative remedy for losing part of his finger" does not help his case.  In fact, it only reinforces the point.  First of all,

the statement constitutes an admission that he elected not to file any formal grievances with the Jail, but opted rather to take his complaint straight to court, precisely the outcome Congress sought to avoid in mandating exhaustion.  More importantly, there presumably <u>was</u> an administrative remedy for Plaintiff's alleged injury to the extent that the Jail clearly could have provided the care he now claims he was denied.  Indeed, it is difficult to see what better way for him to have obtained the treatment he desired, if it was not forthcoming, than through administrative complaints.  Finally, even crediting Plaintiff's rather strained view that appropriate administrative relief was unavailable, he was still required to exhaust the administrative process.  <u>See</u> <u>Booth</u>, 532 U.S. at 734.

Exceptions to the exhaustion requirement are made under certain narrowly delineated "extraordinary circumstances."  <u>Fuller v. Rich</u>, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam) (citation omitted).  However, the burden to show such circumstances rests with Plaintiff, <u>id.</u>, and he has not cited any.  A review of the record does not reveal them either.  Accordingly, Plaintiff failed to exhaust administrative remedies.

**C.** **Plaintiff's Complaint Cannot Be Dismissed On The Grounds That His Injuries Were <u>De</u> <u>Minimis</u>.**

**1.** **There is no <u>de</u> <u>minimis</u> requirement.**

Defendants contend that Plaintiff's injury, if he suffered any, was <u>de</u> <u>minimis</u>.  (D.E. 45, at 7-9; D.E. 46, at 8-9; D.E. 47, at 8-9).  They assert that the only harm that came to Plaintiff was, at most, a swollen finger, that there are no medical records to substantiate the extent of the injury, and that he never pursued medical care.  (D.E. 45, at 8-9; D.E. 46, at 8-9; D.E. 47, at 8-9).

Defendants cite two Fifth Circuit decisions to bolster their contention that "'[t]he physical injury required [in prisoner civil rights claims] must be more than *de minimis*." (D.E. 45, at 8; D.E. 46, at 8; D.E. 47, at 8) (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) and Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)). Both were decided before the Supreme Court addressed the issue in the context of excessive force claims in Wilkins v. Gaddy, __ U.S. __, 130 S. Ct. 1175 (2010) (per curiam).[7] There, the Supreme Court ruled that a district court "erred in dismissing Wilkins' complaint based on the supposedly *de minimis* nature of his injuries." Id. at 1180. The Court grounded this conclusion on the principle that "'the core judicial inquiry' [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. at 1178 (citations omitted).

In a footnote, the Wilkins Court discussed federal appellate precedent regarding the question, noting that "[m]ost Circuits to consider the issue have rejected [a] *de minimis* injury requirement." Id. at 1179 n.2 (citing decisions from the Second, Third, Ninth, and Tenth circuits). The footnote also addressed Fifth Circuit case law:

> The Fifth Circuit has sometimes used language indicating agreement with the Fourth Circuit's [view that a de minimis injury is required]. See, *e.g.*, Gomez v. Chandler, 163 F.3d 921, 924 (1999) ("[T]o support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than *de minimis* injury"). But *see* Brown v. Lippard, 472 F.3d 384 (2006) ("This Court has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an excessive force claim").

---

[7] Defendants also cite an unpublished Fifth Circuit decision, and ten district court decisions, which all also predate Wilkins. (D.E. 45, at 9 n.7; D.E. 46, at 9 n.7; D.E. 47, at 9 n.7).

10

Id.

The Fifth Circuit has yet to speak on whether Wilkins disturbed the de minimis rule. District courts have noted that there is now substantial ambiguity as to the continuing vitality of the older line of cases.  See Stewart v. Carmona, No. 3:09-CV-731-O, 2011 WL 208348, at *4 (N.D. Tex. Jan. 21, 2011) (unpublished) ("The *Wilkins* court clearly rejected quantum of injury as a bar to prisoner excessive force claims...."); Carter v. Wilkinson, No. 1:06-cv-2150, 2010 WL 5125499, at *3 (W.D. La. Dec. 9, 2010) (unpublished) ("To the extent that the Fifth Circuit test required some specific quantum of injury–regardless of the force applied–it appears to be overruled.").

In Wilkins,  the Supreme Court did not expressly forbid courts from applying a de minimis injury rule to excessive force claims.  In fact, some language in the opinion could plausibly be read as militating against that outcome.  See Wilkins, 130 S. Ct. 1175 at 1178 ("In requiring what amounts to a showing of significant injury in order to state an excessive force claim, the Fourth Circuit has strayed from the clear holding of this Court in Hudson") (citing Hudson v. McMillian, 503 U.S. 1 (1992)); id. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.") (emphases added).

On the whole, however, the sounder interpretation of Wilkins is that it does bar the de minimis standard that formerly prevailed in the Fifth Circuit, as more direct language in the opinion compels that result.  For instance, the Supreme Court characterized the Fourth Circuit rule reversed in Wilkins in the following manner: "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injuries are de

minimis." Id. at 1179 (citation omitted).  It is impossible to regard the Court's renunciation of this standard as "not defensible" as anything less than a prohibition against dismissing excessive force claims for alleging only de minimis injuries.  Nor is it apparent how the cases cited by Defendants can survive the Supreme Court's declaration that a district court is not permitted to presume "that the absence of 'some arbitrary quantity of injury' requires automatic dismissal of an excessive force claim." Id. (citing Hudson, 503 U.S. at 9).

Leaving the substantive holding of Wilkins to one side, it warrants mention that the Wilkins Court indicated that the Fifth Circuit's position on the de minimis standard was unclear on the point for several years prior.  Juxtaposing Gomez with Brown, the Court quoted two pronouncements on the issue that are manifestly incompatible.  Id. at 1179 n.2.  Brown, the more recent of the two, stated unequivocally that the Fifth Circuit had "never directly held that injuries must reach beyond some arbitrary threshold to satisfy an excessive force claim." 472 F.3d at 386.  That statement has never been retracted by nor has Brown ever been reconsidered by the Fifth Circuit.  Thus, there is some support for the notion that the de minimis rule had been eliminated in the Fifth Circuit even before Wilkins addressed the question.

Given the history of Fifth Circuit precedent, the nature of Wilkins, as well as its interpretation by other district courts in the Fifth Circuit, the de minimis standard enunciated by Harper and Siglar is no longer good law and Defendants may not rely upon it.

Although these cases, as Wilkins did, concern excessive force claims, as opposed to deliberate indifference claims, there is no reason to apply a different minimum level of injury standard in the latter claims.  Indeed, the Fifth Circuit has cited the de minimis rule in both claims, as well as other Eighth Amendment contexts, interchangeably.  See, e.g., Daniels v.

12

Beasley, 241 F. App'x 219, 220 (5th Cir. 2007) (per curiam) (unpublished) (citing Siglar, 112 F.3d at 193 in context of deliberate indifference to serious medical needs); see also Alexander v. Tippah Cnty., Miss., 351 F.3d 626, 631 (5th Cir. 2003) (citing Harper and Siglar in conditions of confinement case); Potts v. Allen, No. 9:06cv222, 2007 WL 1655912, at *6 (E.D. Tex. June 5, 2007) (unpublished) ("A de minimis injury cannot support a deliberate indifference to safety claim any more than it can support a claim of excessive force or a claim of deliberate indifference to a medical need.").

Notably, a district court in the Fourth Circuit, the court overruled by Wilkins, suggested that the new Supreme Court precedent applies equally in deliberate indifference and excessive force claims. Owens v. Jefferson, No. 0:09-2888, 2010 WL 3170148, at *6 (D.S.C. May 4, 2010) (unpublished) ("[W]ith regard to Owens's claim alleging deliberate indifference in failing to provide medical care, the defendants rely on case law precluding recover under § 1983 for de minimis injuries. However, the Fourth Circuit case upon which they rely, Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), has been expressly overruled by the United States Supreme Court."), adopted by 2010 WL 3170073 (D.S.C. Aug. 10, 2010) (unpublished), aff'd, 404 F. App'x 781 (4th Cir. 2010) (per curiam) (unpublished), petition for cert. filed (U.S. Mar. 8, 2011) (No. 10-9501). The rationale motivating Wilkins is just as compelling in the deliberate indifference context. In other words, the extent of an inmate's injuries may be suggestive as to the extent of the deliberate indifference, or as to the appropriate damages if liability is found, but should not, standing alone, bar the claim. A prison official can ignore a meaningful medical danger while being lucky enough to cause only a de minimis injury just as much as he can assault a prisoner fortunate enough not to suffer lasting consequences.

Consequently, the most plausible reading of <u>Wilkins</u> is that it governs both types of cases, that it bars summary dismissal of either claim for alleging only <u>de minimis</u> injuries, and that Defendants' motions must therefore be denied in that respect.

### 2. Plaintiff's alleged injuries are not <u>de minimis</u>.

Accepting <u>arguendo</u> Defendants' view that the <u>de minimis</u> rule remains valid, Plaintiff's alleged injuries still cannot be dismissed on that ground.  Although Defendants are correct that there is no indication in the Jail's records that Plaintiff suffered the extensive injuries he alleges, his sworn statement is itself evidence for purposes of summary judgment.  <u>See</u> <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) ("A plaintiff's ... complaint can be considered as summary judgment evidence ... [if] verified as true and correct under penalty of perjury.") (citation omitted).  Moreover, Plaintiff's January 4, 2009 complaint seeking treatment for a swollen finger, though perhaps casting his credibility in a less than flattering light, does not, as Defendants suggest, demonstrate that he did not suffer the full injuries that he describes in the complaint.  This is especially so given that Plaintiff has intimated that he did not discover the extent of the injury until later, and given that there is no direct documentary evidence proving that he <u>did not</u> suffer such injuries.  <u>See</u> <u>Baker v. Cohen</u>, No. 09-60103-CIV, 2010 WL 3385266, at *14 (S.D. Fla. Aug. 5, 2010) (unpublished) ("the plaintiff's sworn statement in his complaint [regarding the extent of his injuries] must be taken as true, may be considered at summary judgment, and in the absence of evidence to the contrary suffices at summary judgment to indicate that he did suffer" the injuries alleged) (citations omitted), <u>adopted</u> <u>in</u> <u>part</u> <u>by</u> 2010 WL 3385264 (S.D. Fla. Aug. 26, 2010).

Assuming the truth of Plaintiff's account of his eventual injuries, it is clear that they are

14

not de minimis.  He claims that his finger was broken, that it became substantially shorter, that

he suffered an infection, that he was required to undergo two operations, and that he now lacks

full range of motion as a result.  Such injuries manifestly rise to the required level.  See Wilkins,

130 S. Ct. at 1176, 1177, 1179 n.2 (noting that "[e]ven in the Fifth Circuit," Wilkins, who

alleged "'a bruised heel, lower back pain, increased blood pressure, as well as migraine

headaches and dizziness' ... likely would have survived dismissal.") (citing Brown, 472 F.3d at

386 (abrasions on knee and shoulder, pain in knee, and tenderness around thumb not de minimis)

and Gomez, 163 F.3d at 922 (unspecified pain and cuts, scrapes, and contusions not de minimis).

Plaintiff's alleged injuries were not de minimis, and Defendants are not entitled to summary

dismissal on that ground.

**D.    Defendants Were Not Indifferent To Plaintiff's Serious Medical Needs.**

Defendants maintain that there is no evidence indicating that Plaintiff had a serious

medical need, and that there could not have been any indifference toward it as a result.  (D.E. 45,

at 12; D.E. 46, at 13-14).  In the alternative, they argue that even if he did have such a need that

there is no evidence of deliberate indifference, as the records demonstrate that he received

appropriate medical care and was not neglected.  (D.E. 45, at 12-13; D.E. 46, at 15).  Defendant

Kaelin asserts that he has no role in the provision of medical care and did not interfere in any

medical treatment of Plaintiff.  (D.E. 46, at 9-11).  Defendant Flores argues that he was properly

attentive to Plaintiff's medical care, that he did not ignore his complaints, and that he routinely

treats injured inmates.  (D.E. 47, at 9-11, 14).  Finally, Defendants insist that any delay in the

treatment of Plaintiff was the result of his own conduct.  (D.E. 45, at 13; D.E. 46, at 16; D.E. 47,

at 15).

15

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that officials acted with deliberate indifference to serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 105 (1976); Wilson v. Seiter, 501 U.S. 294, 303 (1991); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam).  Deliberate indifference is more than mere negligence.  Farmer v. Brennan, 511 U.S. 825, 835 (1994).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety.  Id. at 837.

Furthermore, "negligent medical care does not constitute a valid § 1983 claim." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993), abrogated on other grounds by Arvie v. Broussard, 42 F.3d 249 (5th Cir. 1994) (per curiam).  As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights.  Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).  Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference even if treatment is negligently administered.  See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321.  "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff fails to satisfy this "extremely high standard."  Every piece of evidence in the record, aside from Plaintiff's complaint itself, suggests that Jail officials responded appropriately to his request for medical attention, and that it was not provided only because he chose to refuse it.  He has provided no reason to doubt Defendants' account in this respect.  Although Plaintiff's allegations must be taken as true regarding the extent of his injuries, because there is no evidence

in the record to contradict them, the same cannot be said of his accusations of deliberate

indifference, as there is substantial evidence in the record belying those conclusory accusations.

Most significantly, Defendants submitted records purporting to indicate that Plaintiff refused

treatment for his finger the day after the alleged incident.  (D.E. 45-6, at 11, 16).  He has not

contested the authenticity of these documents, there is no apparent reason to doubt them, and

they must therefore be accepted as true for summary judgment purposes.  Liberty Lobby, 477

U.S. at 248-49 (once movant makes required showing, non-movant cannot rest on pleadings, but

must establish that there are material controverted facts in order to preclude summary judgment).

He therefore fails to establish negligence, let alone deliberate indifference, and his complaint

must be dismissed.  See Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) (per curiam)

(unpublished) (summary judgment properly granted against a deliberate indifference claim

where evidence indicated that plaintiff was only denied medical treatment when he himself

declined it).

**E.      Plaintiff Has Not Sufficiently Established Municipal Liability To Survive Summary
         Judgment.**

        Defendants contend that there is no evidence of municipal liability because Plaintiff has

not established that the supposed deprivation of medical care derived from an unconstitutional

policy, practice, or custom on the part of Nueces County.  (D.E. 45, at 14; D.E. 46, at 16; D.E.

47, at 16).  They assert, on the contrary, that the record proves that the county has put in place a

thorough and responsive plan to provide medical care for its inmates.  (D.E. 45, at 15-16; D.E.

46, at 16-17; D.E. 47, at 16-17).  Finally, Defendants note that Plaintiff has not come forward

with any other similar incidents tending to show the existence of an unconstitutional policy

17

created by Nueces County.  (D.E. 45, at 17; D.E. 46, at 18; D.E. 47, at 17-18).

For a municipality to be liable pursuant to § 1983, there must be: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).  These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself."  Piotrowski, 237 F.3d at 578; accord Kemppainen v. Aransas County Detention Center, 626 F. Supp. 2d 672, 677 (S.D. Tex. 2009).

The Fifth Circuit has announced that "[a]n official policy for § 1983 purposes may be either a written policy or 'a persistent widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'"  Lawson v. Dallas Cnty., 286 F.3d 257, 263 (5th Cir. 2002) (quoting Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)); accord Kemppainen, 626 F. Supp. 2d at 677.  There must be a link between the policy and the constitutional violation, and the policy must be maintained with an objective deliberate indifference to a constitutionally protected right.  Id.  An isolated incident is insufficient to show a custom.  Bennett v. City of Slidell, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (en banc) (citations omitted); accord Kemppainen, 626 F. Supp. 2d at 677.

Plaintiff definitively fails to meet the most basic element required to establish municipal liability: a violation of constitutional rights whose "moving force" is the policy or custom.  First, he fails to show deliberate indifference and therefore fails to demonstrate a constitutional violation.  Second, assuming arguendo that he has stated a constitutional violation, there is no

18

indication that the unconstitutional acts stemmed from any policy or custom.

On the contrary, Defendants have provided plentiful evidence to establish that Nueces County Jail has put in place a detailed and responsive set of procedures to ensure that inmates receive medical care when needed.  (D.E. 45-14-45-16).  Furthermore, Plaintiff has failed to allege, let alone show, a pattern of misconduct from which any unconstitutional customs might be inferred.  Instead, he has merely described an isolated incident, and he therefore fails to establish municipal liability.

## VI.  CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment, (D.E. 45, 46, 47), are granted and this action, (D.E. 1), is dismissed.

ORDERED this 11th day of May 2011.

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE